**UNITED STATES DISTRICT COURT**
**District of New Jersey**

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

September 4, 2008

Alan R. Ackerman
1719 Route 10 East
Suite 106
Parsippany, New Jersey 07054

Steven J. Polansky
Marshall, Dennehey, Warner, Coleman & Groggin
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 08002

  Re: **Ackerman v. Westport Insurance Corp.**, No. 06-4142 (JLL)

Dear Counsel:

  Presently before the Court is Defendant Westport Insurance Corporation's ("Defendant" or "Westport") motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Court has reviewed the submissions of the parties and decides the motion without oral argument. See Fed. R. Civ. P. 78. For the reasons stated below, the Court grants Defendant's motion for summary judgment.[1]

**I. Factual and Procedural History**

  The following facts are not in dispute unless otherwise noted. The Court recounts only those facts here that are pertinent to the adjudication of this action, despite any other uncontested facts recited by the parties.

---

  [1] In exercising its diversity jurisdiction over this action, the Court will apply the substantive law of the state of New Jersey. See Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir. 1995); McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 661 (3d Cir.), cert. denied, 449 U.S. 976 (1980).

1

### A.  The Dynasty Action

This declaratory judgment action originates from the claims raised in the complaint filed by Dynasty Building Corporation and Gordon LaForge ("LaForge" and collectively with Dynasty Building Corporation, "Dynasty") against Plaintiff Alan Ackerman ("Plaintiff" or "Ackerman"), an attorney and New Jersey resident, in the Superior Court of New Jersey, Bergen County on December 20, 2002 (referred to hereafter as "Dynasty v. Ackerman" or the "Dynasty Action"). Said action arises out of Ackerman's representation of Galen, Inc. ("Galen") during Galen's purchase of a flower shop in Ridgewood, New Jersey. Dynasty Building Corporation extended a development loan and mortgage to Galen to purchase the shop. Said loan was made by Equity One, Inc. and guaranteed by LaForge. Around the time of the closing for the purchase of the shop, Galen notified Ackerman that it would wire the closing funds into Ackerman's attorney trust account. Ackerman received said wire from Equity One, Inc. on December 4, 1996.

In the Dynasty v. Ackerman complaint, Dynasty alleged that Ackerman had improperly received – and then withheld – funds belonging to Dynasty. Dynasty further asserted that Ackerman claimed that said funds belonged to his client, Galen, and disbursed the funds to the same. Ackerman did not represent Dynasty Building Corp. or LaForge during the closing on the flower shop, nor has he ever done so.

Dynasty did not serve Ackerman with its complaint until May of 2003. Ackerman failed to respond to the complaint, which resulted in first, an entry of default against him on October 22, 2003 and then, a default judgment in November of 2003. Ackerman moved the Superior Court to vacate the judgment. The Court did so on February 6, 2004 in an order in which it simultaneously granted a motion to dismissed filed by Ackerman with prejudice. Dynasty appealed. The Appellate Division reversed and vacated the Superior Court's February 6, 2004 Order in April 2005, and remanded the case for further proceedings.

Between Dynasty's appeal and the Appellate Division rendering its opinion, on February 18, 2005, Ackerman notified Westport, a company offering Ackerman customized practice coverage that is incorporated in Missouri, of the Dynasty Action. Ackerman seeks coverage for the Dynasty v. Ackerman action, not for any claim brought by his client, Galen.

On April 6, 2006, Dynasty filed an amended complaint, based on the same nucleus of operative facts as its original complaint, in which it asserted two new claims.

### B.  The Westport Policies

Ackerman asserts that Westport must indemnify him for the prosecution of the Dynasty Action pursuant to a series of insurance policies between them. In April of 2002, Ackerman and Westport entered into an indemnification/insurance policy for the period March 31, 2002 through March 31, 2003 (the "2002 Policy"). Westport issued an identical policy in April of 2003 for the period March 31, 2003 to March 31, 2004 (the "2003 Policy") and again on March 22, 2004 for

the March 31, 2004 to March 31, 2005 period (the "2004 Policy" and collectively with the 2002 Policy and 2003 Policy, the "policies").

The policies issued by Westport to Ackerman all bear the following notice, on the top of the first page:

> This is a Claims-Made and Reported POLICY.  Except as may be otherwise provided herein, this coverage is limited to liability for only those CLAIMS which are first made against the NAMED INSURED and reported to the Company while the POLICY is in force.

Westport offered insurance to Ackerman under the policies based under the following term, under the "Insuring Agreements" clause of the policies:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any . . . .

In the definitions section of the policies, Westport defines "loss" as "the monetary and compensatory portion of any judgment, award or settlement . . ." and "wrongful act" as

> any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of legal services for others in the INSURED'S capacity as a lawyer, and arising out of the conduct of the INSURED'S profession as a lawyer . . . When an INSURED acts as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or other court-appointed fiduciary, the INSURED'S wrongful acts in such capacity shall be deemed to be the rendition of legal services for others in the INSURED'S capacity as a lawyer.

In the "General Terms & Conditions" section of the policy, "claim" is defined as "a demand made upon any INSURED for LOSS . . . including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED."

Furthermore, the policies contain an exclusionary provision which excepts certain types of claims from coverage, including "any conversion, misappropriation or improper commingling of client funds."

Westport notified Ackerman in a letter dated November 2, 2005, that it did not believe the Dynasty Action was covered under the terms of the policies and thus, would not defend or indemnify Plaintiff for the same.  Importantly, the letter designates, inter alia, that Plaintiff's awareness of the Dynasty Action in May 2003 precludes coverage of the claims under the 2004

3

Policy.

    **C.**    **Procedural History**

On August 3, 2006, Ackerman filed a complaint (the "Complaint") against Westport, in the Superior Court of New Jersey, Law Division, Bergen County, for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing. Westport subsequently removed the action to this Court on the basis of diversity jurisdiction. On September 25, 2006, Westport filed an answer and counterclaim, seeking a declaration that Westport is not obligated to defend or indemnify Ackerman with respect to the claims asserted in Dynasty v. Ackerman. Defendant filed the instant motion on February 15, 2008. Plaintiff opposes the motion.

**II.**    **Legal Standard**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**III.**    **Discussion**

Westport asserts that it need not indemnify Ackerman for the Dynasty Action as said claim is not covered by the policies. Ackerman disputes Westport's contention, arguing that under Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231 (3d Cir. 2006),[2] he is absolved of the responsibility of reporting Dynasty's claims upon receiving notice of them because he did not have (1) the subjective knowledge that Dynasty's conversion suit is one for which coverage would be provided under the policies and (2) an objectively reasonable

---

    [2] Plaintiff further relies on Liebling v. Garden State Indem., 337 N.J. Super. 447 (App. Div. 2001), to support his argument.

expectation that a malpractice claim against him.  By Ackerman's logic, his failure to timely notify Westport does not strip him of his right to indemnity for the Dynasty Action.  Ackerman makes two further arguments in support of his position: he claims that (i) he was not required to notify Westport of the Dynasty Action because Dynasty brought a claim for conversion – a claim specifically excluded under the policies and (ii) Dynasty's 2006 amended complaint brought a new cause of action for breach of fiduciary duty and thus, is a new "claim."

     Under New Jersey law, interpretation of an insurance contract is a question of law for the Court, appropriate for examination on a motion for summary judgment.  See Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004); Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996).  The burden rests with the insured to demonstrate that the claim at issue is within the scope of the policy.  Adron, 292 N.J. Super. at 473.  In construing the policy terms of an insurance contract, the court must abide by their "plain, ordinary meaning."  President v. Jenkins, 180 N.J. 550, 562 (2004).  "If the terms of the policy are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."  Id.  If the claim terms are ambiguous, a court should "interpret the contract to comport with the reasonable expectations of the insured," Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001), and construe the contract against the insurer, Villa v. Short, 195 N.J. 15, 29-30 (2008).  See also St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., No. 06-2759, 2007 WL 2571960, at *5 (D.N.J. Aug. 31, 2007) (stating that "if a policy's terms are ambiguous, courts often construe the policy in favor of the insured" (internal quotations omitted)).  When a contract exclusion is at issue, the court must construe it narrowly and look to the insurer to demonstrate the applicability of the exclusion.  Id. at 29.

     There is no dispute that the insurance contract at issue here is a "claims-made" policy.  In this type of policy, "the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer during the period of the policy," notwithstanding the date the claim was made against the insured.  Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 310 (1985).  An insurer's duty under these types of contracts is "triggered by facts known to the insurer," and thus, "the insured is responsible for promptly conveying to the insurer the information that the insured believes will trigger coverage."  Apro Mgmt., Inc. v. Royal Surplus Lines Ins. Co., No. 03-2596, 2007 WL 1238574, at *3 (N.J. Super. App. Div. April 30, 2007).  Courts construe such a policy – and its requisite notice requirements – strictly because

> [i]n exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period.  Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to substantially broader than that expressly insured against in the policy.

Zuckerman, 100 N.J. at 324.

In the case at bar, then, the Court must look to the plain language of the policies to determine if Westport accorded Ackerman coverage for the Dynasty Action. If the Dynasty Action is a "claim" or "wrongful act" as defined by the policies, then Ackerman bore the obligation of informing Westport of the Dynasty Action within the time period specified in the policies. Ackerman argues that the Dynasty Action does not contain allegations substantiating a "wrongful act" as it was within the policies' "conversion" exclusion. However, in its original December 2002 complaint, Dynasty merely alleged that Ackerman's receipt, acceptance and withholding of the two wire transfers constituted a "theft." For purposes of the policies, the "theft" alleged constitutes a "wrongful act" in that it is an "act [or] error" that Ackerman perpetrated in his "capacity as a lawyer."[3] Even assuming *arguendo* that Ackerman, an attorney himself, understood Dynasty to be making a "conversion" claim in the December 2002 complaint, he would have understood said claim to be excepted from his policy coverage and not anticipate indemnification from Westport on said claim.[4]

Regardless, the Dynasty Action constitutes a "claim" under the policies: Dynasty served the suit on Ackerman, making a "demand" for "monetary [or] compensatory portion of a[] judgment." Thus, Ackerman was required to notify Westport of said action if he even contemplated indemnification for the Dynasty Action.

However, Ackerman never specifies the policy under which he believes the Dynasty Action is covered. Consequently, the Court is left to speculate as to the applicable policy and thus, the appropriate date by which Ackerman was required to give Westport notice of the Dynasty Action. The Court will examine two scenarios under which Ackerman could plausibly be seeking indemnification under the policies.

First, Ackerman received notice of the "claim" in May of 2003 at the time he received the summons and complaint from Dynasty. Said date falls within the time period covered by the

---

[3] Ackerman argues that the alleged "theft" is not a "wrongful act" because he was not acting in his capacity as a lawyer for Dynasty, but rather for his client, Galen. The definition of "wrongful act" in the policies does not specify for whom the insured must be acting "in his capacity as a lawyer," only that the act was done during the "rendition of legal services." Ackerman specifically argues that he accepted the wired funds – and refused to turn them over to Dynasty – because he was acting for the benefit of Galen.

[4] Ackerman relies on notes from Kimberly Carpenter, a Westport's claims investigator, to support his contention that he did not initially believe the Dynasty Action to be covered because it was an action for "conversion." The Court is not swayed. Ms. Carpenter's notes are only her impressions of the 2005 notice letter from Ackerman, not legal conclusions or facts supporting Ackerman's opposition. Moreover, Ms. Carpenter's notes would support Westport's position here: she writes "Insured is not seeking coverage for the conversion lawsuit [Dynasty v. Ackerman], should the appellate court reinstate it . . . . He merely wanted to put us on notice in case the Appellate decision triggers a legal mal claim by his client, Galen."

2003 Policy; however, Ackerman did not notify Westport until February 18, 2005, the time period covered by the 2004 Policy. Because the policies are limited to "those claims . . . first made . . . while the policy is in force" and because Ackerman received notice of the Dynasty Action in May 2003, the 2003 Policy is that which should cover the Dynasty Action. The reporting requirements of the policies are such that the insured must report the "claim made" within the policy term or 60 days thereafter. Ackerman's February 2005 reporting is thus well outside the insured period for the 2003 Policy.

Second, giving Ackerman the benefit of the doubt, the Court will assume that Ackerman seeks coverage for the Dynasty Action under the 2004 Policy. However, coverage fails under this theory as to the 2004 Policy based on the "claims made" disclaimer, i.e., the 2004 Policy only covers claims made between March 31, 2004 and March 31, 2005 – a period in which the "claim" made in the Dynasty Action does not fall.

The Court is likewise unconvinced by Ackerman's argument that the 2006 amended complaint in Dynasty v. Ackerman containing a count for breach of fiduciary duty constitutes a new "claim," first made in 2006. The Appellate Division considered and rejected the identical argument made by the plaintiffs in Apro. There, plaintiffs received notice of the initial complaint in March of 2001, but did not report the action to their insurer at that time. See Apro, 2007 WL 1238574, at *1-2. An amended complaint was filed in May of 2002; plaintiffs gave notice of the same to their insurer on October 11, 2002. Id. Plaintiffs argued that they had no obligation to report the initial complaint as they were not seeking coverage for the claims asserted there, only for the additional allegations in the amended complaint. The Appellate Division held: "Plaintiffs may not circumvent the reporting requirements under a claims-made policy by picking and choosing the claims for which they seek coverage when those claims all arise out of the same occurrence or incident." Id. at *5. Here, Dynasty's amended complaint is premised on the exact same facts as its original complaint: it merely contains additional causes of action against Ackerman based on said facts. Thus, Ackerman may not evade the notice requirements contained in the policies merely by asserting that newly-asserted causes of action in Dynasty's amended complaint constitute a "new" claim.[5]

As to Ackerman's reliance on the two-part test laid out in Colliers, the Court finds the test inapplicable to the situation at bar. In Colliers, the Third Circuit considered the district court's conclusion that the insurer's denial of retroactive coverage under a claims-made policy was a breach of contract. 458 F.3d at 235. The policy at issue in Colliers provided retroactive coverage for claims "provided that the insured had no knowledge of any suit, or any act or error or omission, which might reasonable be expected to result in a claim or suit as of the date of signing the application." Id. at 233. On appeal, the Third Circuit understood the primary

---

[5] Moreover, Ackerman was put on notice that claims arising out of the same "wrongful act" "shall be deemed a single claim" and that "[a]ll such claims whenever made shall be considered first made on the date on which the earliest claim was first made arising out of [the] wrongful act" under the "Multiple Insureds, Claims, and Claimants" clause in the policies.

7

question to be the "proper construction of the policy exclusion" and held that

> the plain language of the policy exclusion mandates a subject test for the first part of the necessary inquiry – whether the insured had knowledge of a suit, act, error, or omission – and an objective test for the second part of the necessary inquiry – whether the suit, act, error, or omission might reasonably be expected to result in a claim or suit.

Id.  While Ackerman cites this test as the vehicle by which a court must "determine whether or not an insured is entitled to coverage in cases where it has been denied by the insurer," this Court recognizes the Colliers analysis as narrow, applicable where the specific exclusionary language cited above is at issue.   The retroactive nature of the coverage under the policies is not in dispute at this juncture, rendering the Colliers two-part analysis inapplicable to the Court's analysis here.[6]

## IV.   Conclusion

For the aforementioned reasons, the Court grants Defendant's motion for summary judgment and dismisses the action.  An appropriate Order accompanies this Letter Opinion.


Dated: September 4, 2008                                 /s/ Jose L. Linares
                                                                      United States District Judge

---

[6] Ackerman's reliance on Liebling is misplaced as the Third Circuit's holding in Colliers was specifically made contrary to Liebling.  458 F.3d at 243.